# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| CHAD MITCHELL BECKER, ) | |
| ) | |
| Plaintiff, ) | CIVIL ACTION |
| ) | |
| v. ) | No. 15-1296-JWL |
| ) | |
| CAROLYN W. COLVIN, ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

## MEMORANDUM AND ORDER

Plaintiff seeks review of a decision of the Acting Commissioner of Social Security (hereinafter Commissioner) denying Disability Insurance benefits (DIB) and Supplemental Security Income (SSI) benefits under sections 216(i), 223, 1602, and 1614(a)(3)(A) of the Social Security Act.  42 U.S.C. §§ 416(i), 423, 1381a, and 1382c(a)(3)(A) (hereinafter the Act).  Finding no error, the court ORDERS that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's final decision.

## I.    Background

Plaintiff applied for DIB and SSI benefits, alleging disability beginning March 27, 2012.  (R. 18, 190, 196).  Plaintiff exhausted proceedings before the Commissioner, and now seeks judicial review of the final decision denying benefits.  Plaintiff argues that the

Administrative Law Judge (ALJ) erred in considering the medical evidence regarding

Listing 1.04, in failing to accord proper weight to the medical opinions of his treating

orthopedic surgeon, in relying on the medical opinions of non-examining state agency

consultants when there was evidence to the contrary, by failing to include severe

impairments of radiculopathy and stenosis, and by failing to include a residual functional

capacity (RFC) limitation in the ability to bend.

The court's review is guided by the Act.  Wall v. Astrue, 561 F.3d 1048, 1052

(10th Cir. 2009).  Section 405(g) provides that in judicial review "[t]he findings of the

Commissioner as to any fact, if supported by substantial evidence, shall be conclusive."

42 U.S.C. § 405(g).  The court determines whether the factual findings are supported by

substantial evidence in the record and whether she applied the correct legal standard.  Lax

v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); accord, White v. Barnhart, 287 F.3d

903, 905 (10th Cir. 2001).  Substantial evidence is more than a scintilla, but it is less than

a preponderance; it is "such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971); see

also, Wall, 561 F.3d at 1052; Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988).

The court may "neither reweigh the evidence nor substitute [its] judgment for that

of the agency."  Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting

Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); accord,

Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005).  Nonetheless, the

determination whether substantial evidence supports the Commissioner's decision is not

2

simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion.  Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

The Commissioner uses a five-step sequential process to evaluate a claim for disability.  20 C.F.R. §§ 404.1520, 416.920; Wilson v. Astrue, 602 F.3d 1136, 1139 (10th Cir. 2010) (citing Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988)).  "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary."  Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084).  In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether he has a severe impairment(s), and whether the severity of his impairment(s) meets or equals the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1).  Williams, 844 F.2d at 750-51.  After evaluating step three, the Commissioner assesses claimant's RFC.  20 C.F.R. § 404.1520(e).  This assessment is used at both step four and step five of the sequential evaluation process.  Id.

The Commissioner next evaluates steps four and five of the sequential process-- determining at step four whether, in light of the RFC assessed, claimant can perform his past relevant work; and at step five whether, when also considering the vocational factors of age, education, and work experience, claimant is able to perform other work in the economy.  Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084).  In steps one through four the burden is on Plaintiff to prove a disability that prevents performance of

past relevant work.  Blea v. Barnhart, 466 F.3d 903, 907 (10th Cir. 2006); accord, Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2. At step five, the burden shifts to the Commissioner to show that there are jobs in the economy which are within the RFC assessed.  Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999).

Plaintiff's Social Security Brief (Doc. 11) (hereinafter Pl. Brief) does not mention the five-step process applied by the Commissioner in evaluation of a claim for disability benefits.[1]  Application of that process is part of the legal standard required to be applied by the Commissioner in determining disability.  Therefore, the court considers each of the arguments Plaintiff presents in the order they would be reached in applying the sequential evaluation process, and finds no error in the final decision of the Commissioner.

## II.    Step Two

Plaintiff's first (in the five-step process) claim of error is that the ALJ failed to consider radiculopathy and stenosis as severe impairments in her evaluation of Plaintiff's condition at step two.  (Pl. Brief 15).  He argues that these impairments were continually diagnosed by Dr. Bernhardt along with spondylolisthesis and low-back pain, but that the ALJ did not consider them despite record evidence of pain, loss of range of motion, decreased sensation, and a need to change positions and take breaks frequently.  Id.  He

---

[1]In his Reply Brief (Doc. 18) (hereinafter Reply), Plaintiff responds to the Commissioner's arguments based on the five-step evaluation process, and argues why, in his view, the Commissioner erred in applying that process.

argues that as a result of this error, the ALJ failed to include all of his limitations such as inability to bend, pain, and the need to take frequent breaks when assessing RFC.  Id., at 16.  The Commissioner argues that the step-two error, if any, was harmless because the ALJ properly considered all of Plaintiff's impairments and any limitations resulting from them when she assessed Plaintiff's RFC.  (Doc. 17, p.12) (hereinafter Comm'r Br.).  Plaintiff argues in response that the failure to identify an impairment was to ignore step two in the decision-making process, and that the Commissioner provided no authority for her assertion otherwise.  (Reply 6).[2]

As Plaintiff suggests, the ALJ found irritable bowel syndrome and spondylolisthesis at L4-5 (status post laminectomy and fusion) as Plaintiff's only severe impairments at step two of her decision.  (R. 20).  However, even apart from the likelihood that the ALJ considered stenosis and radiculopathy as part and parcel of her finding of "spondylolisthesis at L4-5 (status post laminectomy and fusion)," the failure to find a particular impairment severe within the meaning of the Act and regulations at step two is not error so long as the Commissioner considered all of Plaintiff's impairments, both those that are severe and those that are not severe, in the later steps in the process.  Brescia v. Astrue, 287 F. App'x 626, 628-629 (10th Cir. 2008) (citing 20 C.F.R. §§ 404.1523, 416.923).  In Brescia, the claimant argued that the ALJ erroneously

---

[2]Plaintiff did not number the pages in his Reply Brief, so the court relies on the page numbers supplied by the software it uses to retrieve and read .pdf documents from the court's Case Management/Electronic Case Filing (CM/ECF) system.

5

determined that several of her impairments did not qualify as severe impairments.  The court held that once an ALJ has found that plaintiff has at least one severe impairment, a failure to designate another as "severe" at step two does not constitute reversible error because, under the regulations, the agency at later steps considers the combined effect of all of the claimant's impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity.  Again, in Hill v. Astrue, 289 F. App'x. 289, 291-292, (10th Cir. 2008) (citing Soc. Sec. Ruling (SSR) 96-8p, 1996 WL 374184, at *5), the court held that the failure to find that additional impairments are also severe is not in itself cause for reversal so long as the ALJ, in determining plaintiff's RFC, considers the effects "of all of the claimant's medically determinable impairments, both those he deems 'severe' and those 'not severe.'"

Here, the ALJ considered Plaintiff's low-back pain, radiculopathy, stenosis, and fusion when discussing her RFC assessment between step three and step four of her decision.  (R. 20-31).  Specifically, the ALJ discussed the history of Plaintiff's treatment for his back pain--how he had stopped work because of back pain, had been treated by two chiropractors and a back surgeon, and eventually had back surgery.  (R. 21, 24-26).  She noted Dr. Bernhardt's diagnoses in December 2012 of lumbar radiculitis, isthmic spondylolisthesis, and chronic low back pain (R. 25) (citing Ex. 10F, p.4 (R. 463)) , and his diagnoses of "isthmic spondylolisthesis, foraminal stenosis, lumbar radiculopathy, and chronic low back pain with a fair prognosis," in an RFC assessment dated November 8,

2013.  (R. 29) (citing Ex. 14F, p.2 (R. 497)).[3]  She noted that Plaintiff "underwent a L4

and L5 laminectomies [sic] and L4-5 posterior spinal fusion" (R. 25) (citing Ex 3F, p.1

(R. 312)), and discussed the record regarding the results of that surgery.  (R. 26).  From

this discussion it is abundantly clear that in assessing RFC the ALJ considered all of the

impairments that Plaintiff claims are severe.  More is not required.

## III.    Step Three

Plaintiff next argues that the "ALJ failed to consider the medical evidence

regarding Listing 1.04A."  (Pl. Brief 7).  He asserts that the ALJ provided reasons in her

step three discussion to find that Listing 1.04C is not met, but that she did not consider

Listing 1.04A.  Id.  Plaintiff does not specifically argue that his condition meets or equals

Listing 1.04A, but he cites to evidence which in his view shows "compromise of a nerve

root," limited range of motion, and positive straight leg raising, and suggests motor,

---

[3]The court consistently uses the "Bates Numbers" at the bottom right hand corner
of each page of the administrative record throughout this opinion when citing to any
portion of the administrative record except the "Certification" page or the "Court
Transcript Index" pages.  Plaintiff's Brief presents some confusion when citing to page
numbers in the administrative record.  When citing to the administrative record, Plaintiff
apparently cited to the page numbers provided by the software he used to view the .pdf
files from the court's CM/ECF system (or perhaps from the software he used to view the
record as provided from the Commissioner's electronic files).  E.g., (Pl. Brief 7-8) (citing
"Tr. at 397").  The document Plaintiff cited as "Tr. at 397" (Dr. Bernhardt's "Problems"
list from August 17, 2012--diagnosing lumbar spinal stenosis and lumbar radiculitis) is
the page of the administrative record with the "Bates Number" of 393 (four ordinals less
than Plaintiff's citation) in the lower right hand corner of the page.  Plaintiff apparently
missed the fact that the "Certification" page and the three "Court Transcript Index" pages
are not numbered as a part of the administrative record.  This confusion is evident
throughout Plaintiff's Brief and his Reply Brief.

sensory, or reflex loss based on tingling in his leg, decreased strength and mobility, and diminished reflexes and sensitivity.  (Pl. Brief 8-9).  He argues that the record evidence cited would "support a finding that the requirements of Listing 1.04A were met," and argues that if the ALJ was unsure whether the Listing was met she had a duty to develop the record and obtain medical expert testimony regarding the Listing.  Id. at 9.

The Commissioner argues that Plaintiff's condition does not meet Listing 1.04. (Comm'r Br. 3).  She points out the step three finding that Plaintiff's condition does not meet Listing 1.04, and Plaintiff's counsel's assertion that Plaintiff does not meet or equal a Listing.  Id. (citing R. 20, finding 4, and R. 42).  She argues that Plaintiff cannot now claim error in that regard.  Id., at 3-4 (citing Branum v. Barnhart, 385 F.3d 1268, 1271 (10th Cir. 2004) ("ALJ should ordinarily be entitled to rely on the claimant's counsel to structure and present claimant's case"); Tracy v. Astrue, 518 F. Supp. 2d 1291, 1305-06 (D. Kan. 2007) (invited error doctrine precludes a party "from inducing action by a court and later seeking reversal on the ground that the requested action was error"); (Huffman v. Colvin, Civ. A. No. 12-1192-JWL, 2013 WL 5304053, at *15 (same)).  The Commissioner goes further and argues that the record evidence demonstrates that Listing 1.04A is not met because the problem of nerve root compression was surgically corrected and because no physician opined that the Listing is met, and that any period of time where the Listing was met was less than twelve months.  Id., at 5-6.

In his Reply Brief, Plaintiff argues that he should not be precluded by the invited error doctrine because the ALJ left the record open after the hearing, Plaintiff presented

new evidence thereafter suggesting that Listing 1.04 was in fact met, and counsel's

assertions at the hearing were based on incomplete medical records and should not be

held against him in the face of more complete evidence.  (Reply 3).  He argues that

counsel's argument at the hearing is different than the evidence presented after the

hearing, and the ALJ has a duty to apply the evidence in light of the law at step three

regardless of counsel's arguments.  (Reply 4).  He also argues that there is evidence

suggesting that the Listing was met for at least a twelve month period.  Id.

As a preliminary matter, the court finds that the ALJ did consider Listings 1.04A,

1.04B, and 1.04C and found that none of them is met.  Listing 1.04 provides:

> 1.04 Disorders of the spine (e.g., herniated nucleus pulposus, spinal
> arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet
> arthritis, vertebral fracture) resulting in compromise of a nerve root
> (including the cauda equina) or the spinal cord.
> With:
>
> A. Evidence of nerve root compression characterized by neuro-anatomic
> distribution of pain, limitation of motion of the spine, motor loss (atrophy
> with associated muscle weakness or muscle weakness) accompanied by
> sensory or reflex loss and, if there is involvement of the lower back,
> positive straight-leg raising test (sitting and supine);
>
> or
>
> B. Spinal arachnoiditis, confirmed by an operative note or pathology report
> of tissue biopsy, or by appropriate medically acceptable imaging,
> manifested by severe burning or painful dysesthesia, resulting in the need
> for changes in position or posture more than once every 2 hours;
>
> or
>
> C. Lumbar spinal stenosis resulting in pseudoclaudication, established by
> findings on appropriate medically acceptable imaging, manifested by

chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b.

20 C.F.R., Pt. 404, Subpt. P, App. 1 § 1.04.

The ALJ found:

The claimant's back impairment does not meet or medically equal the criteria of listing 1.04.  Section 1.04 is not met because there is no evidence of nerve root compensation, spinal arachnoiditis, or lumbar spinal stenosis combined with an inability to ambulate effectively.  The undersigned's finding is based upon the review of the evidence of record and based on the fact that no consultative examiner, treating source, medical expert, or DDS [(the state Disability Determination Service)] examiner has found that the claimant meets or equals a listing.

(R. 20).  In context, it is clear that the finding of no evidence of spinal arachnoiditis is a finding that Listing 1.04B is not met, because Listing 1.04B requires a confirmed diagnosis of spinal arachnoiditis.  Likewise, the finding that there is no evidence of lumbar spinal stenosis combined with an inability to ambulate effective is a finding that Listing 1.04C is not met, because Listing 1.04C requires lumbar spinal stenosis which results in an inability to ambulate effectively.  The only remaining question is whether the ALJ found that Listing 1.04A is met or equaled, and why.

The answer is that the ALJ found Listing 1.04A is not met or equaled because there is no evidence of nerve root compression.  The ALJ actually stated that Listing 1.04A "is not met because there is no evidence of nerve root compensation."  (R. 20) (emphasis added).  In the context of consideration of Listing 1.04A, "nerve root compensation" is nonsensical, because the Listing nowhere discusses such a term, criterion, or finding.  Moreover, the court's search for "nerve root compensation" on the

WebMD site revealed "0 results found."  (Available at) http://www.webmd.com/search/ search_results/default.aspx?query=%22nerve%20root%20compensation%22 (last visited August 2, 2016).  This fact suggests that "nerve root compensation" is not even a medical concept.  Based upon the context and structure of the ALJ's finding, "compensation" is merely a scrivener's error, and the ALJ intended to use the word "compression."  This is the only understanding which makes sense.  A finding of no evidence of nerve root compression demonstrates that at least one criterion of Listing 1.04A is not met.  The ALJ's sentence, interpreted thus, reveals that the ALJ stated, in order, that each of the individual Listings, A, B, and C under Listing 1.04 was not met or equaled because there was no evidence fulfilling the criteria of that particular Listing.  Plaintiff is incorrect when he argues that the ALJ failed even to consider Listing 1.04A.

To the extent that Plaintiff argues that the ALJ did not sufficiently consider Listing 1.04A, or that his condition meets or medically equals Listing 1.04A, that argument is precluded from being made before this court because of the invited error doctrine.  As Plaintiff admits, his counsel stated at the ALJ hearing, "In the end, we don't believe that he meets or equals a listing."  (R. 42) (tacitly acknowledged in Plaintiff's Reply Brief, p. 3 ("claimant's counsel presented Listing arguments, or lack thereof, based on incomplete medical records")).  The invited error doctrine prevents a party from inducing action by a court and later seeking reversal on the grounds that the requested action was error.  Eateries, Inc. v. J.R. Simplot Co., 346 F.3d 1225, 1229 (10th Cir. 2003); John Zink Co. v. Zink, 241 F.3d 1256, 1259 (10th Cir. 2001).  The doctrine has been applied where the

error was invited in administrative proceedings.  <u>St. Anthony Hosp. v. Dept. of H.H.S</u>,

309 F.3d 680, 696 (10th Cir. 2002).  Here, Plaintiff informed the ALJ that he did not meet

or equal any listing.  He cannot now argue otherwise before this court.

      The fact that Plaintiff submitted additional evidence after the hearing does not

change the result.  First, the record does not indicate in any way that counsel changed his

mind about the Listing or alerted the ALJ that he was no longer asserting that Plaintiff did

not meet or equal the Listing criteria.  Moreover, and perhaps more importantly, the

evidence presented after the hearing is substantially identical to evidence contained in the

record before the hearing, and upon which counsel apparently relied in asserting that

Plaintiff's condition does not meet or equal a Listing.

      Plaintiff points to a treatment record dated October 2013 which was placed in the

record after the hearing, and argues that it contains evidence of diagnosis with stenosis

and radiculitis, the presence of severe back pain, and diminished reflexes and touch, all

after the back surgery.  (Reply 3) (citing R. 504-09).  As Plaintiff suggests, the record

contains a treatment note from Dr. Bernhardt dated October 29, 2013 which the court

finds to be the record to which Plaintiff cites.  (R. 500-07).  However, pages 508 and 509

of the record (also cited by Plaintiff) are the first two pages of a treatment note from Dr.

Bernhardt dated April 5, 2013, and are not discussed in Plaintiff's Reply Brief.  Once

again, the court notes that Plaintiff apparently cited to the pages of the administrative

record provided by the software he used to view the record from the court's CM/ECF

system rather than the "Bates Numbers" provided at the lower right hand corner of each

page of the record.  Therefore, it is impossible to know with certainty the evidence Plaintiff relied upon in making his argument.  Nevertheless, each of the facts which he asserts were present in the record after the hearing but not before, were in fact contained in the record evidence before the hearing.  Dr. Bernhardt provided a treatment note dated December 18, 2012--four and one-half months after Plaintiff's surgery--which provided all of the facts Plaintiff relied upon.  (R. 463-69).  That record evidence reveals that after the surgery Plaintiff was diagnosed with stenosis and radiculitis (R. 463), diminished reflexes and touch (R. 468), and low back pain.  (R. 466-67).  The administrative record was to the same effect both before and after the hearing, and counsel admitted at the hearing that Plaintiff does not meet or equal a Listing.  Plaintiff may not now argue before the court that his condition meets or equals the severity of Listing 1.04A.

Moreover, even if the court were to consider the issue, it would find that Plaintiff has not shown that the Listing is met or equaled.  Plaintiff has not shown that the evidence to which he appeals meets <u>all</u> of the criteria of Listing 1.04A and thereby <u>compels</u> a finding that the Listing is met or equaled.  And, as the ALJ noted in her decision, "no consultative examiner, treating source, medical expert, or DDS examiner has found that the claimant meets or equals a listing."  (R. 20).

## IV.    RFC Assessment - Between Step Three and Step Four

### A.    <u>Medical Source Opinions</u>

Plaintiff next argues that the ALJ did not accord sufficient weight to the opinions of Dr. Bernhardt, his treating physician, and accorded too much weight to the opinions of

non-examining physicians.  (Pl. Brief 10-14).  He argues that the ALJ did not apply the correct legal standard in weighing Dr. Bernhardt's opinions, that "Dr. Bernhardt's opinion was entitled to controlling weight based on the length of his treatment," and that the ALJ erroneously determined that Dr. Bernhardt's most recent treatment notes were dated October 2012. Id., at 10-12.  He explains how, in his view the record evidence requires that the ALJ should have given Dr. Bernhardt's opinions controlling weight.  Id., at 12-13.  Finally, he argues that the opinions of non-examining agency physicians are entitled to the least weight of all, and were erroneously accorded greater weight than the opinions of Dr. Bernhardt, despite contrary record evidence.  Id., at 13-14.

The Commissioner argues that the ALJ permissibly relied on four doctors' opinions and discounted the opinions of one doctor--Dr. Bernhardt.  (Comm'r Br. 7).  She argues that the "outlying opinions" of Dr. Bernhardt were worthy of less weight than the opinions of the state agency physicians and of the consultant examiner.  Id., at 7-8.  She argues that Plaintiff's suggestion that Dr. Bernhardt's opinion is worthy of "controlling weight" misunderstands the regulations, and that the record evidence supports the ALJ's decision to discount Dr. Bernhardt's opinions because they are inconsistent with the record as a whole, because they are inconsistent with Dr. Bernhardt's treatment notes, because the record evidence shows that Plaintiff's condition has significantly improved, because the opinion is not accompanied by recent treatment notes, and because the opinions do not appear to have been completed by Dr. Bernhardt personally.  Id., at 8-10.  She argues that although there was record evidence contrary to the opinions of the non-

14

treating and non-examining physicians' opinions, "state agency consultants 'are highly qualified physicians, psychologists, and other medical specialists who are also experts in Social Security disability evaluation,' and their opinions must be considered."  (Comm'r Br. 10) (quoting 20 C.F.R. § 404.1527(e)(2); SSR 96-7p, 1996 WL 374186, at *8).

### B.   The ALJ's Weighing of the Medical Opinions

The ALJ provided an extensive discussion of her RFC assessment.  (R. 20-31). Therein she summarized and discussed the record evidence, including Plaintiff's allegations, testimony, and submissions, the medical evidence, and the opinion evidence. She provided her credibility analysis and explained why she accorded only "some weight" to Plaintiff's allegations of disabling symptoms.  Id., 20-24.  The ALJ discussed the medical records (R. 24-29), and discussed and weighed the medical opinions.  (R. 29-31). The ALJ stated that she gave "great weight" to Dr. Bernhardt's recommendation that Plaintiff continue "walking for exercise and return[] to school in order to be retrained in a different field," and to Dr. Wallace's opinion that Plaintiff "would likely be a candidate for occupational rehabilitation."  (R. 24) (citing Exs. 8F, p.7, 15F, p.8; (R. 457, 506)).

The ALJ summarized Dr. Wallace's consultative examination of Plaintiff, and explained the weight accorded to it:

> Dr. Wallace opined that the claimant could sit for 6 hours, but could only stand and walk for 2 hours with frequent breaks; could not lift anything more than 10 pounds frequently and occasionally; and unlimited overhead reaching (Exhibit 8F, p. 7).  Dr. Wallace opined that the claimant has good use of his hands and has no environmental limitations (Exhibit 8F, p. 7). Dr. Wallace found that the claimant's strength was compromised in the arms, legs, shoulders, and feet (Exhibit 8F, p. 7).  In addition, Dr. Wallace

assessed the claimant had markedly diminished mobility in the lumbar spine limiting his ability to bend and lift (Exhibit 8F, p. 7).  Notably, Dr. Wallace found that the claimant's IBS and past history of knee surgeries creates [sic] no limitations (Exhibit 8F, p. 7).  The undersigned affords Dr. Wallace's opinion great weight because it is supported with relevant evidence in the record and contains supporting rationale.  Dr. Wallace's opinion is also supported by Dr. Bernhardt's treatment notes and the claimant's activities of daily living.

(R. 27).

The ALJ summarized the opinions of the state agency consultants, Dr. Kindling, Dr. Hitchcock, and Dr. Harper, noting opinions that allowed for a range of sedentary work further limited to occasionally climbing ladders, ropes, scaffolds, ramps, and stairs; and occasionally stooping, kneeling, crouching, and crawling.  (R. 29).  He noted that Dr. Kindling additionally limited Plaintiff to no climbing ladders, ramps, and scaffolds, and to avoid concentrated exposure to hazards such as machinery and heights, and that Drs. Hitchcock and Harper found Plaintiff could perform unlimited balancing.  Id.

Finally, the ALJ discussed the opinions of Dr. Bernhardt in "Residual Functional Capacity Questionnaires" dated August 24, 2014, and November 8, 2013.  (R. 29-31) (citing Exs. 6F, 14F (R. 439-40, 497-98)).  The ALJ noted that the date on the first questionnaire (August 24, 2014) was erroneous, and found that it was completed following Plaintiff's back surgery on August 2, 2012.  (R. 30-31).  The court finds the ALJ's determination is supported by record evidence.  Likely, the questionnaire was completed on August 24, 2012, because it contains facsimile headings for Dr. Bernhardt's office and for the law firm who represented Plaintiff before the Social Security

Administration dated August 29, 2012, and September 21, 2012, respectively.  (R. 439-40).  Moreover, the cover letter forwarding the questionnaire is dated September 12, 2012, and states that the date of Dr. Bernhardt's opinion is August 24, 2012.  (R. 438).

The ALJ recognized Dr. Bernhardt was Plaintiff's treating orthopedist and he performed Plaintiff's back surgery and treated Plaintiff both before and after his surgery.  (R. 25, 26, 29).  She summarized Dr. Bernhardt's opinions, recognizing his opinions that Plaintiff cannot sit, stand, and walk for eight hours in a day, that Plaintiff requires a sit/stand option at will, that he requires frequent unscheduled breaks of ten to fifteen minutes each, and that he would likely miss work more than four times a month due to his back impairments.  (R. 29-30).  The ALJ accorded great weight to Dr. Bernhardt's recommendation in his treatment notes that Plaintiff continue walking for exercise and seek retraining.  (R. 26).  But, she accorded "minimal weight" to the opinions Dr. Bernhardt expressed in his questionnaires.  (R. 30-31).  She discounted the upper extremity limitations expressed by Dr. Bernhardt because he had not been specific regarding such limitations, because the record does not provide evidence of manipulative limitations, and because Plaintiff did not report such limitations.  Id. at 30.  She also explained that she discounted Dr. Bernhardt's opinions because they were not supported by record evidence showing inability to work eight hours in a day, because they were inconsistent with Dr. Bernhardt's recommendation to engage in walking exercises and job retraining, because they were not accompanied by recent treatment notes after October 2012, because the opinion was not completed by Dr. Bernhardt personally, because it "is

17

inconsistent with the record as a whole, because Dr. Bernhardt's treatment notes demonstrate that Plaintiff made "significant improvement" after surgery and suggest that he can perform sedentary work, because one opinion is dated well beyond the date on which it was prepared right after Plaintiff's surgery and is not indicative of Plaintiff's ability after healing, recovery, and significant improvement.  Id., at 30-31.

### C.      Standard For Weighing Medical Opinions

As the Commissioner suggests, Plaintiff's argument that Dr. Bernhardt's opinion should have been accorded "controlling weight" reflects a misunderstanding of the standard for weighing medical opinions.  However, the Commissioner's suggestion that the mere fact that there are four medical opinions (of a non-treating consultant and three non-examining state agency physicians) supporting the ALJ's assessment is sufficient in itself to overcome a single "outlying" opinion (of a treating orthopedist) reflects at least a willingness to ignore that standard.  (Comm'r Br. 7).  Nowhere in the Commissioner's Brief did she lay out the applicable standard, but Plaintiff did.  (Bl. Brief 10).  Nevertheless, the ALJ appears to have applied the correct standard.

"Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s) including [claimant's] symptoms, diagnosis and prognosis."  20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2).  They may not be ignored and, unless a treating source opinion is given controlling weight, all medical opinions will be evaluated in accordance with factors contained in the regulations.  Id. §§ 404.1527(c), 416.927(c);

18

SSR 96-5p, West's Soc. Sec. Reporting Serv., Rulings 123-24 (Supp. 2015).  A physician or psychologist who has treated a patient frequently over an extended period of time (a treating source)[4] is expected to have greater insight into the patient's medical condition, and his opinion is generally entitled to "particular weight."  Doyal v. Barnhart, 331 F.3d 758, 762 (10th Cir. 2003).  But, "the opinion of an examining physician [(a nontreating source)] who only saw the claimant once is not entitled to the sort of deferential treatment accorded to a treating physician's opinion."  Id. at 763 (citing Reid v. Chater, 71 F.3d 372, 374 (10th Cir. 1995)).  However, opinions of nontreating sources are generally given more weight than the opinions of nonexamining sources who have merely reviewed the medical record.  Robinson v. Barnhart, 366 F.3d 1078, 1084 (10th Cir. 2004); Talbot v. Heckler, 814 F.2d 1456, 1463 (10th Cir. 1987) (citing Broadbent v. Harris, 698 F.2d 407, 412 (10th Cir. 1983), Whitney v. Schweiker, 695 F.2d 784, 789 (7th Cir. 1982), and Wier ex rel. Wier v. Heckler, 734 F.2d 955, 963 (3d Cir. 1984)).

"If [the Commissioner] find[s] that a treating source's opinion on the issue(s) of the nature and severity of [the claimant's] impairment(s) [(1)] is well-supported by

---

[4]The regulations define three types of "acceptable medical sources:"

"Treating source:"  an "acceptable medical source" who has provided the claimant with medical treatment or evaluation in an ongoing treatment relationship.  20 C.F.R. §§ 404.1502, 416.902.

"Nontreating source:"  an "acceptable medical source" who has examined the claimant, but never had a treatment relationship.  Id.

"Nonexamining source:"  an "acceptable medical source" who has not examined the claimant, but provides a medical opinion.  Id.

medically acceptable clinical and laboratory diagnostic techniques and [(2)] is not

inconsistent with the other substantial evidence in [claimant's] case record, [the

Commissioner] will give it controlling weight." 20 C.F.R. §§ 404.1527(c)(2),

416.927(c)(2); see also, SSR 96-2p, West's Soc. Sec. Reporting Serv., Rulings 111-15

(Supp. 2015) ("Giving Controlling Weight to Treating Source Medical Opinions").

     The Tenth Circuit has explained the nature of the inquiry regarding a treating

source's medical opinion. Watkins v. Barnhart, 350 F.3d 1297, 1300-01 (10th Cir. 2003)

(citing SSR 96-2p). The ALJ first determines "whether the opinion is 'well-supported by

medically acceptable clinical and laboratory diagnostic techniques.'" Id. at 1300 (quoting

SSR 96-2p). If the opinion is well-supported, the ALJ must confirm that the opinion is

also consistent with other substantial evidence in the record. Id. "[I]f the opinion is

deficient in either of these respects, then it is not entitled to controlling weight." Id.

     If the treating source opinion is not given controlling weight, the inquiry does not

end. Id. A treating source opinion is "still entitled to deference and must be weighed

using all of the factors provided in 20 C.F.R. § 404.1527 and 416.927." Id. Those factors

are: (1) length of treatment relationship and frequency of examination; (2) the nature and

extent of the treatment relationship, including the treatment provided and the kind of

examination or testing performed; (3) the degree to which the physician's opinion is

supported by relevant evidence; (4) consistency between the opinion and the record as a

whole; (5) whether or not the physician is a specialist in the area upon which an opinion

is rendered; and (6) other factors brought to the ALJ's attention which tend to support or

contradict the opinion.  Id. at 1301; 20 C.F.R. §§ 404.1527(c)(2-6), 416.927(c)(2-6); see also Drapeau v. Massanari, 255 F.3d 1211, 1213 (10th Cir. 2001) (citing Goatcher v. Dep't of Health & Human Servs., 52 F.3d 288, 290 (10th Cir. 1995)).

After considering the factors, the ALJ must give reasons in the decision for the weight he gives the medical opinions.  Id. 350 F.3d at 1301.  "Finally, if the ALJ rejects the opinion completely, he must then give 'specific, legitimate reasons' for doing so."  Id. (citing Miller v. Chater, 99 F.3d 972, 976 (10th Cir. 1996) (quoting Frey v. Bowen, 816 F.2d 508, 513 (10th Cir. 1987)).

### D.    Analysis

As the Commissioner suggests, it was proper for the ALJ not to have given controlling weight to Dr. Bernhardt's opinions.  "Controlling weight" is a term of art regarding the weight to be assigned to certain opinions of a treating medical source in a Social Security disability determination.  As discussed above, if a treating source opinion is either not well-supported by medically acceptable clinical and laboratory diagnostic techniques, or if it is inconsistent with other substantial evidence in the record it may not be accorded controlling weight.  Watkins, 350 F.3d at 1300.  SSR 96-2p explains that "substantial evidence" as used in determining whether a treating source opinion is worthy of controlling weight is given the same meaning as determined by the Court in Perales, 402 U.S. at 401.  SSR 96-2, West's Soc. Sec. Reporting Serv., Rulings 113 (Supp. 2015). As the Ruling explains, evidence is "substantial evidence" precluding the award of "controlling weight," if it is "such relevant evidence as a reasonable mind would accept

21

as adequate to support a conclusion that is contrary to the conclusion expressed in the medical opinion." Id.  Therefore, because the opinions of Dr. Wallace and the three state agency consultants are such evidence as a reasonable mind could accept to reach a conclusion contrary to Dr. Bernhardt's opinions, the ALJ could not award Dr. Bernhardt's opinions controlling weight.  While it may have been helpful for the ALJ to specifically state that she did not accord controlling weight to Dr. Bernhardt's opinions and why, it is clear that she found Dr. Bernhardt's opinions are inconsistent with other substantial evidence in the case record, and she could not accord his opinions controlling weight.

Nevertheless, Dr. Bernhardt's opinions are treating source opinions, are worthy of deference, and must be weighed in accordance with the regulatory factors, and the ALJ must provide specific, legitimate reasons to discount them.  She has done so here.

Plaintiff first claims that the ALJ did not consider the length of time Dr. Bernhardt treated Plaintiff.  While the ALJ did not state the length of time Dr. Bernhardt treated Plaintiff, it is clear that she was aware Dr. Bernhardt was Plaintiff's treating orthopedist, she summarized his records and summarized Plaintiff's treatment with two chiropractors, physical therapy, and steroid injections, and noted Dr. Bernhardt's decision after all of this treatment to recommend surgery.  Morever, the court will not insist on a factor-by-factor analysis so long as the "ALJ's decision [is] 'sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'" Oldham v. Astrue, 509 F.3d 1254, 1258 (10th Cir. 2007) (quoting Watkins, 350 F.3d at 1300).  That standard is met here.

22

Plaintiff next argues that the ALJ's evaluation of Dr. Bernhardt's opinions is erroneous because she failed to consider his treatment records after October 2012 as is demonstrated by the fact that she stated that Dr. Bernhardt's most recent treatment notes "are dated October 2012." (R. 30). He argues that the ALJ "simply failed to consider Dr. Bernhardt's treatment notes at [Ex.] 15F [(R. 499-515)]," despite that in his very next clause he asserts that "she had considered these very same progress notes earlier in her Decision [sic]." (Pl. Brief 11) (citations omitted, brackets added). He argues that the ALJ abused her discretion when she failed or refused to consider these treatment notes when analyzing Dr. Bernhardt's opinions despite summarizing them earlier in her decision. Id., at 11-12.

It is somewhat troubling that the ALJ stated that "the most recent treatment notes from Dr. Bernhardt are dated October 2012." (R. 30). The record contains Exhibit 15F which includes treatment notes from Dr. Bernhardt dated April 5, and October 29, 2013, both of which are more recent than October 2012. (R. 499-515). But, as Plaintiff acknowledged in his Brief, the ALJ considered and summarized all of Dr. Bernhardt's treatment notes in her decision. (R. 24-28, passim). Although Plaintiff argues that the ALJ considered these treatment notes earlier in her decision but did not consider them when weighing Dr. Bernhardt's opinions, the court does not view the decision in such a compartmentalized fashion. As noted above, the treatment notes presented after the hearing are substantially identical to Dr. Bernhardt's notes contained in the record before the hearing. Moreover, the ALJ provided numerous reasons for discounting Dr.

23

Bernhardt's opinions in addition to finding that they are not accompanied by recent treatment notes.  Considering the ALJ's rationale apart from this erroneous finding, she has provided specific, legitimate reasons which are supported by the record evidence to discount Dr. Bernhardt's opinions.  Because there is substantial evidence to sustain the ALJ's decision despite this error, the error is harmless, and the court will not remand merely for a ministerial correction.  Wilson v. Sullivan, No. 90-5061, 1991 WL 35284, *2 (10th Cir. Feb. 28, 1991).

The remainder of Plaintiff's argument--that had the ALJ weighed the evidence properly she would have accepted Dr. Bernhardt's opinion--is essentially a request for the court to reweigh the evidence and substitute its judgment for that of the ALJ.  As noted above, that is beyond the scope of judicial review.  Bowman, 511 F.3d at 1272; accord, Hackett, 395 F.3d at 1172.

Having failed to show error in the ALJ's evaluation of Dr. Bernhardt's opinions, Plaintiff cannot prevail in her claim of error in evaluating the state agency consultants' opinions.  Plaintiff is correct that the opinions of non-examining physicians are generally entitled to the least weight.  Robinson, 366 F.3d at 1084.  But, the only evidence to which Plaintiff appeals as contrary to the consultants' opinions is Dr. Bernhardt's opinions and Dr. Bernhardt's treatment notes.  Herein, the court found that the ALJ properly discounted Dr. Bernhardt's opinions and has found that Dr. Bernhardt's treatment notes submitted after the hearing are substantially identical to his records provided before the hearing.  Otherwise, Plaintiff points to none of the records provided after the consultants

24

formed their opinions which are contrary to those opinions.  Plaintiff has shown no error in according great weight to the consultants' opinions.

> **E.**     **Plaintiff's Limitations**

For his final argument, Plaintiff claims the ALJ did not consider all of Plaintiff's limitations in assessing RFC.  This is so, in Plaintiff's view because the ALJ did not include Dr. Wallace's opinions regarding inability to bend and the ability to stand and walk for two hours with frequent breaks.  (Pl. Brief 16).  Once again, Plaintiff misapprehends both the ALJ's decision and the terminology used in Social Security disability decisions.

As the Commissioner's Brief suggests, Social Security Ruling 85-15 includes the definitions of to "kneel," as "to bend the legs alone;" to "stoop," as "to bend the spine alone;" and to "crouch," as to "bend both the spine and legs."  SSR 85-15, <u>Titles II and XVI:  Capability to Do Other Work--The Medical-Vocational Rules as a Framework for Evaluating Solely Nonexertional Impairments</u>, 1985 WL 56857, at *2 (1985).  Thus, it is clear that the ALJ accorded "great weight" to Dr. Wallace's opinion that Plaintiff's ability to bend was limited when she found that Plaintiff can only occasionally "stoop, kneel, crouch, and crawl."  (R. 20).

As for Dr. Wallace's opinion that Plaintiff can stand and walk for two hours with frequent breaks, that opinion was expressed as an opinion of Plaintiff's abilities over an eight-hour workday--"[b]ased on my examination the claimant can sit for six hours but can only stand and walk for two hours with frequent breaks."  (R. 457).  In itself, an

opinion that one can only stand and/or walk for a total of two hours in an eight-hour workday implies that there must be numerous breaks in standing and/or walking in order for work processes to continue throughout the day.  Moreover, the ALJ nailed down that requirement when she found that Plaintiff can "stand/walk for no more than 30 minutes at one time."  (R. 20) (finding 5, bolding omitted).  Dr. Wallace did not provide a specific time limit for standing and/or walking, and Plaintiff does not point to record evidence suggesting that the ALJ's interpretation is erroneous.  Further, all of the state agency consultants reviewed Dr. Wallace's opinion and determined that Plaintiff would be able to stand and/or walk for two hours in an eight-hour workday with normal breaks.  (R. 73-90, 95-114).  The court finds no error in the decision below.

**IT IS THEREFORE ORDERED** that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's final decision.

Dated this 8th  day of August 2016, at Kansas City, Kansas.


s:/ John W. Lungstrum
**John W. Lungstrum**
**United States District Judge**